FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 16, 2016

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CONNIE ALLEN,<br><br>     Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>     Defendant. | No. 1:14-CV-03139-SMJ<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT** |

Before the Court, without oral argument, are cross-summary-judgment motions. ECF Nos. 14 & 17. Plaintiff Connie Allen appeals the Administrative Law Judge's (ALJ) denial of benefits. Plaintiff contends the ALJ erred by (1) discrediting Ms. Allen's subjective testimony, (2) incorrectly assessing the impacts of Ms. Allen's Fibromyalgia and Pain Disorder, (3) improperly weighing the medical opinions of Ms. Allen's treating providers, and (4) improperly finding Ms. Allen did not meet listing 1.04A. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision. After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth

ORDER **-** 1

below, the Court grants Plaintiff's motion and therefore denies The Commissioner's motion.

I.  **Statement of Facts**[1]

Born in 1966, Plaintiff was 45 years old on the date the application was filed. Tr. 202. She has an eleventh grade education. Tr. 95. Plaintiff alleged disability due to heart problems, tendonitis in her left arm, panic, anxiety, post-traumatic stress disorder (PTSD), depressive disorder, shoulder pain, chronic neck pain, chronic bilateral foot pain, chronic bronchitis, asthma, thoracic outlet syndrome, and fibromyalgia. Tr. 221, 266.

Plaintiff filed her application on September 29, 2011, alleging disability beginning August 1, 2010. Tr. 202-07. The application was denied initially and upon reconsideration. Tr. 138-55. She requested a hearing before an ALJ, which was held on February 14, 2013. Tr. 36-110. At the hearing, Plaintiff amended her alleged onset date to September 29, 2011. Tr. 41. On April 11, 2013, the ALJ issued a decision finding Plaintiff not disabled. Tr. 18-30. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision. Tr. 1-6.

II. **Disability Determination**

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

ORDER **-** 2

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

ORDER **-** 3

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other

substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### III.   Standard of Review

On review, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision.  *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).  The Court upholds the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987) (recognizing that a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*,

348 F.2d 289, 293 (9th Cir. 1965). If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

### IV. Analysis

#### a. *Subjective Testimony*

The ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear and convincing reasons" for doing so. *Smolen v. Chater,* 80 F.3d at 1281 (9th Cr. 1996). The ALJ rejected Ms. Allen's testimony about her physical symptoms claiming "that the medical evidence did not corroborate her claims of disabling pain." (Def. Br. pg 7 at 9). The Court concludes that the ALJ's assertion is not supported by substantial evidence, nor does it qualify as convincing reasoning.

First, numerous doctors, confirmed Ms. Allen's claims of severe symptoms. (AR 457, 115, 28). Further, the EMG/Nerve conduction studies reported symptoms that were consistent with Ms. Allen's diagnoses. While the ALJ did not consider Ms. Allen's Fibromyalgia (FM) to be medically-determined, the studies lend credence to her diagnosis of FM, or alternatively, her diagnosis of a pain disorder associated with both psychological factors and a general medical condition.

Additionally, the ALJ cites Ms. Allen's activities of driving a car and chopping wood as evidence that her testimony is not credible. However, the evidence suggests that when she performed these activities, they exacerbated her symptoms to the point where she had to visit the ER, even after limiting herself by taking frequent breaks. (AR 83, 85, 470-471, 478-479). This cannot be a clear and convincing reason in support of the ALJ's opinion. In fact, it corroborates Ms. Allen's testimony.

The ALJ also cited Ms. Allen's ability to perform basic chores, gardening, and cooking, without explaining any contradiction in Ms. Allen's testimony and her activities. Ms. Allen qualified her ability to perform these activities by explaining her need to take frequent breaks and being mindful of her posture and her own limitations. (AR 85, 501). Ms. Allen can perform some chores, but the extent of limitations in her ability to perform them is evidence of her actual disability.

For these reasons, the Court concludes that the ALJ's decision was not supported by clear and convincing evidence, nor substantial evidence from the record.

### b. *Step 2 Analysis*

The ALJ found at step two that Ms. Allen's diagnosis of Fibromyalgia was not enough to determine that it is a medically determinable impairment (MDI).

Referencing the guidelines given in SSR 12-2p the ALJ rejected Ms. Allen's Fibromyalgia diagnosis because she found that Vern Commet, DNP, ARNP, was not an acceptable medical source, and that Amra Nasir, MD, rule out other causes of Ms. Allen's symptoms of pain (AR 21-22). This constituted an erroneous finding for numerous reasons.

There is substantial evidence within the record demonstrating that Ms. Allen has symptoms consistent with FM. (Pl. Brief Pg 27 at 1-15). A good portion of the medical record entails testing and examinations seeking to diagnose the cause of these symptoms, which are consistently present and impactful on Ms. Allen's ability to perform work-related activities. First, several medical sources diagnosed Ms. Allen with Fibromyalgia. The state agency physician found fibromyalgia was a severe medically determinable impairment, Dr. Bernardez-Fu, M.D. (AR 129, 137). Dr. Henderson, M.D. diagnosed fibromyalgia. (AR 341). Dr. Nasir, M.D. (AR 341). Dr. Pearson, PhD (AR 513), and Vern Commet, DNP, ARNP. (AR 374, 376).

The ALJ also stated that there is no evidence in the record that Dr. Nasir and Mr. Commet ruled out other disorders that could cause the patient's symptoms. (AR 21-22). But, Mr. Commet repeatedly tried to determine the medical causes of Ms. Allen's symptoms, and ruled out numerous other disorders. Mr. Commet specifically ruled out Ms. Allen's neck pain after reviewing Ms.

ORDER - 8

Allen's medical history and MRI imaging. (AR 376). Ms. Allen's EMG and vascular tests ultimately ruled out TOS and carpal tunnel, and numerous x-rays and MRI images indicated that there was no bony or ligamentous abnormality which could cause the paresthesia in her arms. (AR 452). The entire record indicates a continuous process of evaluating for, and ruling out other causes for Ms. Allen's pain.

The Court finds that the ALJ determination at Step 2 was not supported by substantial evidence.

### c. Medical Opinions

Ms. Allen argues that the ALJ improperly weighed the medical evidence from Ms. Chet, Mr. Moen, and Drs. Drenguis, and O'Leary.

#### i. Ms. Chet and Dr. Drenguis

The ALJ gave significant weight to Ms. Chet's August 2011 evaluation because her "attached physical evaluation notes show normal flexion and extension of her cervical spine and full range of motion (ROM) in her upper extremities bilaterally." (AR 27). However, while Ms. Chet's opinion did show normal findings, since it was before the onset date, there is no legal justification for using it to reject later opinions whose findings were not normal. Dr. Liu, a treating physician, provided measured evidence that contradict Ms. Chet's normal finding indicating severely limited ROM for Ms. Allen's left arm. (AR 447, 449,

452). Later evaluations by other examiners in 2012 confirmed persistent shoulder impingement and abnormal arm functioning. (AR 441, 479).

Ms. Chet also assessed normal ROM in Ms. Allen's neck, yet this is also disputed by objective measurements and evaluations conducted by Drs. Drenguis and Gade. (AR 328, 370). While the ALJ says that Ms. Chet's evaluation was consistent with the record, it is inconsistent with Ms. Chet's opinion given after the alleged onset date where Ms. Chet found neck pain did cause postural limitations, that Ms. Allen had limitations in both gross and fine manipulation, and that she could not be on her feet for 6 of 8 hours. (AR 429).

Dr. Drenguis, was also given significant weight after assessing Ms. Allen for her neck problems. He did not assess any limitations for Ms. Allen's left arm, except for decreased strength because the major deterioration of her shoulder had not yet exacerbated until a few weeks later. (AR 326). However, the tests conducted by Dr. Liu, Mr. Vargas, and at Yakima Valley Memorial Hospital all showed significant deterioration of Ms. Allen's ROM for her left arm, contradicting Dr. Drenguis' findings. Further while Dr. Drenguis found normal deep tendon reflexes, Dr. Gade assessed decreased sensation and abnormal deep tendon reflexes in November 201. (AR 370). The records thus shows that the providers produced contradicting evidence and sometimes conflicting evidence.

However, the ALJ insufficiently supported her decision to give significant weights to certain providers over others.

### ii. Dr. Mary O'Leary

The ALJ rejected Dr. O'Leary's opinions about Ms. Allen's mental limitations because they were alleged to be inconsistent with her evaluation. (AR 26). But the record indicates that Dr. O'Leary reviewed at least one other report which helped to inform her opinion—the evaluation from Mr. Moen which took place a few months earlier, and which noted observed deficiencies in memory and concentration. (AR 320). Dr. O'Leary further noted that there was "no evidence of malingering or factitious behavior during the evaluation today." (AR 321). Dr. O'Leary diagnosed Major Depressive Disorder, Severe, Panic Disorder, Anxiety Disorder, and Post Traumatic Disorder. (AR 323). She noted a guarded prognosis and if she was going to obtain an ability to work in the future that ability would be aided by further counseling. (AR 323). Dr. O'Leary also noted observing anxious behavior (AR 321). Since Dr. O'Leary's opinion was based on more than just her examination, it was not inconsistent with her knowledge of Ms. Allen's conditions to opine that her depression affected her ability to work and concentrate.

### iii. Dick Moen, MSW

ORDER - 11

The ALJ assigned little weight to the August 2011 evaluation from Mr. Moen which opined multiple marked and moderate limitations. The ALJ asserts that his opinions "were based upon [Ms. Allen]'s subjective complaints."

As discussed above, the ALJ erred by finding Ms. Allen not credible. Further, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion" *Ghanim v. Colvin*, 763 F.3d 1154 (9th Cir. 2014). The ALJ did not attempt to demonstrate that Mr. Moen's opinions were based "more heavily" upon Ms. Allen's self-reports than his clinical observations, but merely stated that it appeared that way. This is insufficient to reject Mr. Moen's opinions.

For the forgoing reasons, the Court concludes that the improperly weigh the aforementioned medical evidence, and her findings were not supported by substantial evidence.

### d. Listing 1.04A

The ALJ found that Ms. Allen did not meet listing 1.04A because she "had a negative straight-leg raising test" and her "reflexes were consistently noted as intact." (AR 22). The Commissioner admits that it was an error to rely on a negative straight leg test, but claims this error was harmless because there was no nerve root compression. This reasoning was not provided by the ALJ in her decision and thus represents post hoc rationalization.

A fundamental rule of administrative law is that an ALJ's decision can only be upheld based on the ALJ's own findings and not on alternative findings proffered by the Commissioner's attorneys in a later legal brief. Indeed, "the ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d, 448, 455 (5th Cir. 2000). In accordance with this holding, the Ninth Circuit has held that "if the Commissioner's contention invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline." *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).

This Court concludes that the ALJ's finding concerning listing 1.04A is not supported by substantial evidence.

**V.   Conclusion**

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. **JUDGMENT** is to be entered in Plaintiff's favor.

4. The case shall be **CLOSED**.

1

2  **IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and

3  provide copies to all counsel.

4  **DATED** this 16th day of May 2016.

5

6  _____
   SALVADOR MENDOZA, JR.
   United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Q:\SMJ\Civil\2014\Allen v Colvin-3139\Ord Grant SMJ Lc2 docx

ORDER - 14